## BENNETT v. FITZGERALD.
### Patent Appeal No. 2661.

Court of Customs and Patent Appeals.
April 15, 1931.

Glenn S. Noble, of Chicago, Ill., for appellant.

Kwis, Hudson & Kent, of Cleveland, Ohio (A. F. Kwis and S. J. Boughton, both of Cleveland, Ohio, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an interference proceeding; appellant appeals from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Examiner of Interferences, awarding priority of invention to appellee.

The counts in issue are:

"1. A container comprising a body having a bead at the top, a head having a portion extending over the bead, and a sealing ring for securely fastening and sealing the cover having a flange extending inwardly over said portion of the head and having a continuous downward flange crimped at intervals beneath said bead leaving intervening uncrimped portions.

"2. A container having a bead at the top, a head fitted to the container and having an outwardly extending marginal flange projecting over said bead, and a sealing ring for securely fastening and sealing the cover head having a flange projecting inwardly over the flange of the head, and having a continuous downwardly projecting flange having portions bent inwardly at intervals at substantially a right angle to said downwardly projecting flange beneath the bead leaving intervening uncrimped portions having curved connections with the inwardly bent portions."

The invention relates to cans or containers of the general type common in the art,

918

comprising body portions having covers with sealing rings for fastening the covers to the body portions. The invention involved is the crimping of the sealing ring at intervals, thereby leaving uncrimped portions between the crimped portions.

The application of appellant was filed on April 30, 1927, and that of appellee was filed on August 19, 1926. Appellant is therefore the junior party.

Both tribunals of the Patent Office held that appellee conceived the invention in September, 1925, and reduced it to practice in the spring of 1926; that appellant conceived the invention in December, 1923, but did not reduce it to practice prior to the reduction to practice by appellee, and that appellant was not diligent in reducing his invention to practice at the time appellee entered the field, nor for more than one year thereafter; that, even if appellant had reduced his invention to practice in December, 1923, he had concealed and suppressed his invention, thereby forfeiting any right to claim priority of invention.

■ The questions involved upon this appeal are principally questions of fact. The tribunals of the Patent Office having concurred in their findings of fact, we must accept such findings unless they are manifestly wrong. Pengilly v. Copeland, 40 F.(2d) 995, 17 C. C. P. A. 1143.

We therefore accept without discussion the findings of said tribunals as to conception and reduction to practice by appellee, and as to conception by appellant, because the record clearly supports such findings. The real contest here is whether appellant reduced his invention to practice in December, 1923, and, if he did so, whether he concealed and suppressed the invention, thus forfeiting any right to claim priority of invention.

Appellant claims, and we think the evidence establishes, that, following the making of a sketch of a ring seal container in December, 1923, which sketch is in evidence, he made or caused to be made and tested one dozen of such containers, which correspond to the counts in issue; that the invention as embodied in these containers was fully disclosed to three persons, all of whom were fellow officers of the Wilson & Bennett Manufacturing Company, hereinafter called the Wilson Company, of which appellant was secretary and general manager. It appears that said company was a large manufacturer of steel containers and steel barrels, and had been so engaged since 1907; that in December, 1923, in addition to the container

here involved, another form of container had been developed by said company which was known as No. 7.

Appellant testified that all of said twelve containers were lost or destroyed, but that a pail cover and ring, embodying the invention here in question, was preserved. Said cover and ring were produced and offered in evidence. Appellant testified that the majority of the dozen containers were made by means of their No. 7 closing machine, designed for closing lead containers and especially their No. 7 container; that in making the tests the containers were filled with water and paint and dropped; that the tests showed that said containers were not any more satisfactory than their No. 7 container; that they were as good but no better, and for that reason they did not consider the extra expense of their manufacture justified at that time; that the closing seal used upon said containers was very weak and ineffective; and that, after said tests, the invention was passed on to the Wilson Company for further development.

Appellant further testified that no application for a patent was made for the No. 7 container, because it was found that the art embodied therein was old; that in August, 1925, appellant invented another form of container and applied for a patent thereon in December, 1925. This container was put upon the market and became known as their No. 8 container. Appellant further testified that on December 1, 1925, he filed an application for patent on a new closing machine, which was known as the No. 8 closing machine, and manufactured it and commenced its use in that month; that said No. 8 closing machine, used upon the containers embodying the invention here in question, made a much better closure, and that this fact, in addition to an improvement in the hoop or ring, caused the Wilson Company to enter upon the manufacture of containers of the type here in question and to sell them to the trade; that this was determined upon either in October or December, 1926, and the first orders were received in May, 1927; that in the fall of 1926 appellant learned that the Niles Steel Products Company had put upon the market a pail of the type here in issue, and appellant also knew that the American Can Company had been in the market for a number of years with the same general type of container, but not embodying the invention here in issue.

Appellant's testimony was corroborated in most respects by the testimony of James

H. Wilson, John Chase Bennett, and Augustus P. Heinze, all officers of the Wilson Company. The testimony concerning the result of the tests of said containers amounted to conclusions of the witnesses, except as to the witness Wilson, who testified that some of the sample cans were filled with water and some were filled with paint; that some of them were dropped two feet and others were dropped three feet; that the result of the tests was that "some of them had a slight leak and some were tight"; that "about six" were closed by the No. 7 closing tool and "about four" were closed by hand; that pails closed by the No. 7 closing machine would be more likely to leak than pails closed by the new No. 8 closing machine; that he would not care to furnish to the trade pails embodying this invention with closing machines such as were used in December, 1923.

It also appears from testimony offered on behalf of appellant that tests were made in 1927 of pails purchased in the open market, embodying appellee's device, and that the same kind of tests were applied to them as had been applied to appellant's sample containers in December, 1923; that the result of the tests was that they broke open and their contents were largely lost.

The first question for consideration is whether appellant reduced the invention to practice in December, 1923, as claimed.

Appellant contends that the making of a dozen containers, exactly as specified in the counts in issue, in itself constitutes a reduction to practice, and that no tests of the containers were necessary, but that, if it should be held that tests were necessary to constitute a reduction to practice, then the evidence establishes that such tests were made and that they were successful.

We think the requirements of tests in reduction to practice were correctly stated by the Court of Appeals of the District of Columbia in the case of Sydeman v. Thoma, 32 App. D. C. 362, wherein the court said:

"Decisions involving this often-litigated question of actual reduction to practice may be divided into three general classes. The first class includes devices so simple and of such obvious efficacy that the complete construction of one of a size and form intended for and capable of practical use is held sufficient without test in actual use. [Citing cases]. The second class consists of those where a machine embodying every essential element of the invention, having been tested and its practical utility for the intended purpose demonstrated to reasonable satisfaction, has been held to have been reduced to practice notwithstanding it may not be a mechanically perfect machine. In other words, it is sufficient reduction to practice, although a more desirable commercial result may be obtained by some simple and obvious mechanical improvement, or by substituting another well-known material for the one used in the original construction, as, for example, metal for wood, cast metal for sheet metal, and the like. [Citing cases]. The third class includes those where the machine is of such a character that the particular use for which it is intended must be given special consideration, and requires satisfactory operation in the actual execution of the object."

We are of the opinion that the invention here in issue belongs to the second class of devices above referred to. It was, we think, essential to determine by actual tests if the cover of the container embodying the invention here involved would resist severe shocks, as when dropped, with minimum danger of leakage because of loosening of the top. Both of the parties hereto seem to have recognized this, because appellant did subject the 1923 container to tests and also the same type of container brought out by him in 1926, and appellee also tested his container embodying the invention in issue.

The next question is, Did the tests, in December, 1923, of appellant's device, demonstrate its practicability sufficiently to constitute a reduction to practice of the invention?

As heretofore noted, the testimony of most of appellant's witnesses upon this point consists of conclusions, rather than statements of fact from which we might draw our own conclusion. The witness Wilson, however, did testify that the results of the tests were such that he would not care to offer to the trade containers embodying this invention, with closing machines such as the company then had, and also that the tests revealed that some of the containers had a slight leak. Also, appellant testified that the closing machine used upon the sample containers was very weak and ineffective. This testimony, standing alone, would not be sufficient to negative a successful reduction to practice. A device need not be mechanically perfect, or in its exact form a commercial success. We think it proper, however, to consider said testimony in connection with other circumstances revealed by the record bearing upon the question of reduction to practice.

Of course, if reduction to practice is established, other circumstances or conduct of a party would not warrant us in making a contrary finding; but, if reduction to practice is not clearly established, the facts and circumstances shown by the record may be resorted to for the purpose of determining whether there was in fact a reduction to practice, or whether the alleged reduction to practice was only an abandoned experiment.

The circumstances shown by the record, which we deem material on this point, are:

(1) In December, 1923, appellant's company was manufacturing a container, No. 7, which was not patented, and which it preferred to appellant's 1923 device.

(2) Appellant's device was, after the tests in December, 1923, referred to, turned over to the development department of the Wilson Company "for further development."

(3) In 1925 appellant's 1923 device was discussed by the officers of the Wilson Company, and it was again determined not to manufacture the same.

(4) In 1925 appellant invented another container for which he made application for patent in December, 1925, and the Wilson Company then entered upon the manufacture of said type of container.

(5) In 1925 appellant invented a closing device and applied for a patent thereon, which closing device was the type used in closing appellant's device here in issue when the Wilson Company began its manufacture. The testimony on behalf of appellant is to the effect that this closing device made appellant's container here involved commercially practicable.

(6) In the fall of 1926 appellant was aware that appellee's device was upon the market, as was also a ring seal device of the American Can Company, but said last-named device was of a different character than the device here in question.

(7) Appellant did not place his device upon the market until 1927, and did not file his application for a patent upon the device here involved until April 30, 1927.

Considering the foregoing facts in connection with the lack of positive evidence of the success of the tests in 1923, we are compelled to agree with the tribunals of the Patent Office that the claimed reduction to practice in December, 1923, constituted only an abandoned experiment.

The record does not disclose that appellant in 1926 made any use of the drawing or sketch made in 1923, nor in the consultation held by the executive officers of the Wilson Company in the fall of 1926 was the sample cover, made in December, 1923, and preserved and offered in evidence in this proceeding, produced or considered. On the contrary, the testimony is to the effect that new drawings were made in 1926, and the party who did the drafting, the witness Cornwell, was not advised that the invention had been conceived or reduced to practice in 1923 or at any time prior to his being given instructions to make drawings.

It is a significant circumstance that, if the tests of 1923 by appellant were successful, and the only bar to commercial success of the device was the type of closing machine used in 1923, appellant waited for more than a year after perfecting a closing machine which would successfully operate upon the device here in issue before bringing out as a commercial proposition the device here involved. It is also a significant fact that, although in 1925 appellant applied for a patent for another container, and also for a patent for a closing device, he did not apply for a patent on the device here in issue until long after appellee's device was upon the market.

In the case of Paul v. Hess, 24 App. D. C. 462, the court said:

"Long delay in making use of an invention claimed to have been reduced to practice, or in applying for a patent, have always been regarded as potent circumstances tending to show that the alleged reduction to practice was nothing more than an unsatisfactory or abandoned experiment. Traver v. Brown, 14 App. D. C. 34, 41; Reichenbach v. Kelley, 17 App. D. C. 333, 344; Latham v. Armat, 17 App. D. C. 345. And this is specially the case where, in the meantime, the inventor has been engaged in the prosecution of similar inventions (Fefel v. Stocker, 17 App. D. C. 317, 321), or others, without reasonable explanation, have been adopted for manufacture and commercial use."

Appellant's counsel relies upon the decision of this court in the case of Janette v. Persons, 38 F. (2d) 364, 17 C. C. P. A. 884, to sustain his contention that appellant reduced his invention to practice. It is sufficient to say that in that case the evidence clearly established a reduction to practice of the invention there involved; and in the case at bar, if the evidence clearly established a reduction to practice in December, 1923, by appellant of his alleged invention, the circum-

stances above set out would be immaterial upon that point.

We hold that, while appellant conceived the invention in December, 1923, he did not reduce it to practice until after the application of appellee was filed.

The next question is, Was appellant diligent in reducing the invention to practice at the time that appellee entered the field, and thereafter until appellant's actual reduction to practice? The testimony shows that in December, 1923, after the tests by appellant above referred to, the invention was passed on to the development department of the Wilson Company for further development. At the time of appellee's conception in September, 1925, appellant had done nothing further with the invention. The testimony shows that appellant and his associates discussed the invention, but decided to bring out another type of container. The first activity disclosed by the record on the part of appellant in reducing the invention to practice after December, 1923, occurred in the fall of 1926.

Having held that appellant did not reduce the invention to practice in December, 1923, the evidence clearly shows that there was lack of diligence upon his part in reducing it to practice at the time appellee entered the field and thereafter until appellant reduced the invention to practice.

In view of the conclusion we have reached, it is unnecessary to consider the question of whether appellant concealed and suppressed the invention, as held by the tribunals of the Patent Office.

The decision of the Board of Appeals is affirmed.

Affirmed.

GRAHAM, Presiding Judge, concurs in the conclusion.